## IN THE UNITED STATES FEDERAL COURT OF CLAIMS

**FILED**

DEC 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Bahji Amelia Adams,                )
JANE DOE and  *5086 Crowe Drive*   )
JOHN DOE  *Smyrna, GA 30082*       )
Petetioner/Plaitniff        *2*    )
v.                                 )
                                   )
STATE OF GEORGIA                   )
CITY OF MARIETTIA                  )
COBB COUNTY COURTS,                )
JUDGE GEORGE H. KREEGER, individually )
And Judge of court,                )
JUDGE KENNTH NIX, individually and, )
As Judge of Court                  )
SCOTT M. KAYE, individually, and as )
Corporation of Manchell, Wiggins, and Kaye, L.L.P)
ADAM TODD GEORGE,                  )
JAMES GEORGE,                      )
KATIE HOLDER,                      )
JAMES GEORGE,                      )
MATT GEORGE,                       )
JANE DOE, and JOHN DOE             )
Defendant/Respondent

Case: 1:07-cv-02224
Assgned To : Unassigned
Assign. Date : 12/11/2007
Description: Pro Se Gen. Civil

### COMPLAINT FOR DAMAGES and DECLARTORY JUDGEMENT

Comes NOW, the Petitioner(s), Bahji Amelia Adams, and in direct support of this

demand for relief and injunction for the above-captioned state court cause into, and

through, the various jurisdiciaiton of this Unites States District Court provided under at

least 28 USC 1331, 28 USC 1367, 28 USC 1441(b), 28 USC 1441 (c), 28 USC 1441 (e),

28 1443(1), 28 USC 1443(2), and/or 28 USC 1446, American With Disability Act of

1990, 42 title 123101- 12137, and on the federal questions involved, herein alleges,

states, and provides the following:

**RECEIVED**

NOV 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

## JURISIDCATION

1. This district Court of the United States has original, concurrent, and supplementary jurisdiction over this cause of action, pursuant to the authorities cited above, including, but not limited to the following, to wit: 28 1331, 28 USC 1367, 28 USC 1441 (b), 28 USC 1441(c), 28 USC 1441 (e), 28 USC 1443(1), 28 USC 1443(2), and/or 28 USC 1446.

2. The District Court of the United States is an Article III court with authority to hear the questions arising under the Constitution, LAWs, and Treaties of the United States, including but not limited to the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declarations of Human Rights, The American With Disability Act of 1990, the 504 Rehabilitation Act of the American With Disability Act, Deprivation of Rights under the color of Law and enforcement of said rights, with Reservations. *See* the Article VI Supremacy Clause of the constitution of the United States of America, as lawfully amended (*hereinafter* "U.S. Constitution").

## RESERVATION OF RIGHTS DUE TO FRAUD

3. Petitioner(s) hereby explicitly reserves(s) his/their fundamental Rights(s) to amend this and all subsequent pleadings, should future events and/or disvocreis prove that s/he/they has/have failed to adququetely to comprehend the full extent

of the damage(s) which s/he/they has/have suffered at the hands of the Respondent, the state court, and other involved parties, both named and unnamed, now and at all times in the future.

4. Petitioner(s) hereby explicitly reserves his/her fundamental Rights to another claim for fraud, as fraud is itself to be pleading with particularity.

## RECORD OF STATE PROCEEDINGS

5. Petitioner(s) is/are now proceeding on the basis of the presumption that the COBB COUNTY state court record will be made available to this Honorable Court upon Notice and Demand for Mandatory Judicial Notice, pursuant to rules 201 and 902 of the federal Rules of Evidence, the Full Faith and Credit Clause contained under Article IV of the U.S. Constitution, and 28 U.S.C. 1449.

## INCORPATIONS OF PRIOR PLEADINGS

6. Petitioner(s) hereby incorporate(s) by reference all pleadings, papers, and effects hereto filed or otherwise lodged within the state proceedings the same as if fully set fortyh herein.(H.I.)

## ALLEGATIONS AND STANDING

7. Petitioner(s) complain(s) and shows on matters which go to related federal questions, such as federal criminal jurisdiction within the several states of the Union, and the denial or the inability to enforce, in the courts of s State, one or more rights under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof, to wit:

3

8. Petitioner(s) complains of various systematic and premeditated deprivations of fundamental Rights quarantined by U.S. Constitution, by the Constitution of the State of Georgia, as lawfully amended (*hereinafter* "Georgia Constitution"), and by federal law, and which deprivations are criminal violations of 18 U.S.C. 241 and 242. *See also* 28 U.S.C. 1652.

9. July the 12th, 2006 Bahji Amelia Adams threatened with the loss of her liberty, that being her son, to have to undergo a physicatric evaluation, and have a guardian ad liemt appointed.

   (a) July the 3rd, 2006 Scott M. Kaye made false statements of material facts before the judicial Tribunal in regards to Mrs. Adams, what information he had in his position, and what information Barry Billington had delivered to Scott Kaye for discovery. July 3rd, 2006 comments made in regards to the Plaintiff, Bahji Adams, age, and other discrimatory and defamation of character of the Plaintiff.

   (b) Scott Kaye KNEW On July the 3rd,2006 that which he was seeking he already had in his immediate position, thus showing malice and the intent to subject the Plaintiff to ridicule of the court.

   (c) Judge Kreeger did not do anything to control the conduct of Scott M. Kaye and did not provide any "reasonable accomations" on July the 3rd, 2006. Bahji Amelia Adams asked to speak with someone in regards to her "ada" rights and she was told that the lady with the flower printed dress on that she did not know what, who, she would speak with.

(d) July the 3rd, 2006 Judge Kreeger acted in direct opposition to Georgia Law in regards to attorney fees, and Scott Kaye has prior knowledge directly of the law in regards to this account, yet based his attorney fees upon "guess work" which is in direct opposition to State Law.

(e) Plaitniff request someone, or attorney on the record to speak with in regards to her ADA, American with Disability Rights. She requested from the Jdudge and a blaiffi from the Plaitniff's understanding, all on the record.

(f) November the 7th, 2006 judge Kreeger was given notice of an "order" and a "request" for a continuance based on a disability in regards to the November the 13th, 2006 hearing, which was only served upon the Plaintiff after October the 30th, or thereabout 2006, thus at a minimum not comporting with the Georgia Constitution and Substantive law of the State of Georgia.

(g) The Plaitniff has prayed for a speedy trial, the Plaitniff furthermore on the record has prayed, demanded for a Jury trial, however, the court has allowed this divorce to continue for over 2 years, all while opposing counsel illegally pads the record with fraudlet and deceptive motions, thus orders.

(h) November the 13th, 2006 Judge Kreeger stated "saw no need for a continuance based on a disability…"Scott M. Kaye, refused to allow the Plaintiff a continuance and Judge Kreeger failed to keep the attorney in line with the law.

(i) November the 13th, 2006 the Plaintiff made it very clear on the record that

she NEVER waived her right to an attorney and even request one. The

Judge told the Plaintiff, bahji Adams, to go find one, but refused to

provide on in a Contempt Proceeding and Change of Custody hearing,

although one was requested as a "reasonable accomations". Prior to this

when the Plaintiff would request reasonable accomations, she was told to

"set down and stop talking or she could sit in a holding cell…"

(j) November the 14th, 2006 Justin Wyatt, and attorney, stated in the presence

of third party witnesses, as the record reflects that the "judge was pissed at

Mrs. Adams…(he) did not know what you (Mrs. Adams) had done to piss

him off but he was pissed." Justin Wyatt, further made several

misrepresentative statement and failed to fully disclose the agreement

which was later, without the Plaintiff's understanding, under duress, and

without knowledge, into the record.

(k) November the 30th, 2006, after the Plaintiff refused to sign a consent

agreement, which was not fully disclosed, not what was agreed to by the

Plaintiff, and what was only given UNDER DURESS, Scott M. Kaye,

submitted it to the Judge to have him sign the consent agreement into law.

THERE IS NO SIGNATURE BY AND LEGAL REPRESENTATIVE

ON BEHALF OF Bahji Adams.

(l) December the 2nd, 2006 or thereabout Adam George refused to return the

minor child to the mother, in direct opposition to the only STANDING

ORDER.

6

(m) December the 5th, 2006 Bahji Adams and her family where threatened with the VOID November 30th, 2006 order, which was only taken under direct threats, illegal coercion, and duress of Bahji Adams, that if she refused to return her legal and lawful property the police would be called. Mrs. Adams refused to return her property, which was illegally taken in violation of her rights. This threat was direct by James George and Adam George

(n) The above mentioned November the 13th, 2006 and the lack of ADA consideration, after the court has been duly appraised of said mandating and request for accomations, this pattern has become ongoing by Scott M. Kaye and Adam George and the courts have allowed such in furtherance of the Plaintiff consintnuall request and standing on her ADA rights.

(o) The Plianitff has time and time again NOT been proved her knowledge or been appraised of HER LEGAL RIGHTS, to which she is LAWFULLY entiled TOO, by ANY ATTONREY OF RECORD!!

(p) ADAM GEORGE by and through Scott Kaye have illegally withheld finical information in regards to the income of Adam George in where he went from a 50 CRJ captin to a 70 CRJ caption without disclosing said information in accordance with the law.

Federal question as regarding awards of child support and commissions of fraud therein:

The egregiously different burdens and benefits placed on persons similarly situated but for the award of custody, i.e. parents with the obligation to support their child(ren) and the dame means for doing so as when they were married, has been

7

explained at length in several judicial opinions. The finding is that such disparate

treatment violates the guarantees of equal protection. _Jones v. Helms_, 452 U.S. 412, 101

S.Ct. 2434 (1981), _South Central Bell Telephone Co. v. Alabama,_ 526 U.S. 160, 119

S.Ct. 1180 (1999), and _Romer v. Evans,_ 517 U.S. 620, 116 S.Ct. 1620 (1996). Child

support guidelines do not result in awards based on the constitutionally sound principles

of equal duty and proportional obligation (proportional to available financial resources

such as each parent's income.) See _Smith v. Smith,_ 626 P 2d 342, 345-348 (Oregon,

1980); _Meltzer v. witsberger,_ 480 A. 2d 991 (Pa. 1984); and _Conway v. Dana,_ 318 A. 2d

324 (Pa. 1985).


      Further, the instant state proceedings have consistently demonstrated themselves

to be willfully, intentionally, and knowingly in violation of both state and federal law, by:

ordering awards of child support and custody in favor of Adam George, and threats of

jail, loss of property, etc. against the Plaintiff, that circumvented various statutory due

process considerations factors as to needs, assets, debts, and resources of each parent, as

well, aas violating due process procedures in the timeliness and payment logistics

thereof; moreover, the actual amounts awarded, even if they had not been otherwise

unlawful pursuant to the above, were consistently mandated and carried out in express

violation of statutory maximum limits proscribed by both state and federal law, even

though this Petitioner duly informed the instant state court of said limits multiple times,

within various pleadings, and also on the record in open court. _See_ Ind. Code 24-4.5-5-

104, and Ind. Code 24-4.5-5-105, as well as 15 USC 1673, and 15 USC 1675.

8

Additionally, multiple commissions of fraudulent reporting of income and expenses have been committed in knowing, intentional, and willful concert by Respondent and his counsel, Kaye, When these incidents have been presented to the instant state court, they were also ignored; The result is judicial-attorney conspiracy to commit child support fraud and further unlawful deprivations of property without due process, all in violation of the Constitution and FEDERAL law.

Federal question as regarding equal rights to care, custody, and control of minor children:

a)  A parent's right to raise a child is a constitutionally protected liberty interest. This is well-established constitutional law. The U.S. Supreme Court long ago noted that a parent's right to " the companionship, care, custody, and management of his or her children" is an interest "far more precious" than any property right. *May v. Anderson,* 345 U.S. 528, 533, 97 L.Ed. 1221, 73 S.Ct. 840, 843 (1952). In *Lassiter c. Department of Social Services,* 452 U.S. 18, 27, 68 L.Ed 2d 640, 120 S.Ct. 2153, 2159-60 (1981), the Court stressed that the parent-child relationship "is an important interest that 'undeniably warrants deference and absent a powerful countervailing interest protection." Quoting *Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed 2d 551, 92 S.Ct. 1208 (1972).

b)  A state's granting of sole custody or/and even primary joint, with violations of Due Process of the Plaintiff, Bahji Adams, is sufficiently intrusive to warrant scrutiny, i.e., granting sole custody to one parent impinges on the rights of the other parent to a significant extent. This is obvious to the most casual observer. A parent whose time with a child had been limited to the typical

9

four-days-per-month visitation clearly has had his or her rights to raise that child severely restricted. In *Troxel v. Granville,* 527, U.S. 1069 (1999), Justice O'Conner, speaking for the Court stated, " The Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of law'. We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, 'guarantees more than fair process'. The Clause includes a substantive component that 'provided heightened protection against governmental interference with certain fundamental rights and liberty interest" and "liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interest recognized by this Court." Logically, these forms of fundamental violations are inherently a federal question.

c)  The Compelling state interest in the best interest of the child can be achieved by less restrictive means than sole custody. A quarter-century of research has demonstrated that joint physical custody is as good as or better than sole custody in assuring the best interest of the child. As the Supreme Court in *Reno v. Flores,* 507 U.S. 292, 301 (1993): " the best interest o the child,' a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody. But it is not traditionally the sole criterion – much less the sole constitutional criterion – for other, less narrowly channeled judgments involving children, where their interest conflicts in varying degrees with the interest of others. Even if it were shown, for example, that a particular couple

10

desirous of adopting a child would best provide for the child's welfare, the child would nonetheless not be removed from the custody of its parents so long as they were providing for the child adequately." Narrow tailoring is required when fundamental rights are involved. Thus, the state must show adverse, impact upon the child before restricting a parent from the family dynamic or physical custody. It is apparent that the parent-child relationship of a married parent is protected by the equal protection and due process clauses of the Constitution. In 1978, The Supreme Court clearly indicated that only the relationships of those parents who from the time of conception of the child, never established custody and who fail to support or visit their child(ren) are unprotected by the equal protection and due process clauses of the Constitution. *Quilloin v. Walcott,* 434 U.S. 246, 255 (1978). Clearly, divorced parents enjoy the same rights and obligations to their children as if still married. The state through its family law courts, can impair a parent-child relationship through issuance of a limited visitation order, however, it must make a determination that is has a compelling interest in doing so. Trial courts must, as a matter of constitutional law, fashion orders which will maximize the time children spend with each parent unless the court determines that there are compelling justifications for not maximizing time with each parent. Throughout this century, the Supreme Court also has held that the fundamental right to privacy protects citizens against unwarranted governmental intrusion into such intimate family matters as procreation, child-

11

rearing, marriage, and contraceptive choice. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 926-927 (1992).

d)  Contrary to the state court's consistent disregard for the equal right of this (female) Petitioner to care, custody, control, and management of his natural children, and its corresponding continuum of sole custody in favor of the (male) Respondent, the federal Due Process and Equal Protection rights extend to both parents equally. In *Cabon v. Mohammed,* 441 U.S. 380, (1979) the Supreme Court found that a biological father who had for two years, but no longer, lived with his children and their mother, but not the father, to veto an adoption. In *Lehr v. Robinson,* 463 U.S. 248 (1983), the Supreme Court held that "when an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'coming forward to participate in the rearing of his child,' *Caban, (citations omitted),* his interest in personal contact with his child acquires substantial protection under the Due Process Clause." (Id. At 261-262). To further underscore that need for courts to consider the constitutional protections which attach in family law matters, one need only look to recent civil rights decisions. In *Smith v. City of Fontana,* 818 f. 2 d 1411 (9th Cir. 1987), the court of appeals held that in a civil rights action under 42 U.S.C. section 1983 where police had killed a detainee, the children had a cognizable liberty interest under the due process clause. The analysis of the court included a finding that "parent has a constitutionally protected liberty interest in the companionship and society of his or her child." Id. At 1418, citing *Kelson v. City of Springfiled,* 767 F. 2d 651 (9th Cir. 1985). In

*Smith,* the court stated, " We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationship with their parents." ID. In essence, the Supreme Court has held that a fit parent may not be denied equal legal and physical custody of a minor child without a finding by clear and convcing evidence of parental unfitness and substantial harm to the child, when it ruled in *Santosky v. Kramer,* 455 U.S. 745, 753, (1982), that " the fundamental liberty interest of natural parents in the care, custody, and management of their child is protected by the **Fourteenth Amendment."**

e)  In the Instant state proceedings, Petitioner(s) has/have been continually deprived of the full right to equal care, custody, control, and management of the minor child, and the same approaching TWO YEARS or MORE, without requisite showing of past or potential harm – *any* **KIND** upon the minor child(ren), while, instead and contrarily, Respondent has been consistently documented in acts of the minor to medium abuse towards children, and Bahji Adams, long-ranging neglect of several important matters regarding the child(ren), numerous criminal acts of dishonest nature, serious domestic violence attacks of economic, mental, physciallological, and physical attacks against the Petitioner – even *in the presence of* the children – and, a general haphazard disdain for the minor child's welfare, needs, and emotional and moral stability…yet, that state court essentially coddles his behavior against the best interest of the minor child and the victim of abuse, and even have gone to extraordinary lengths to shelter and assist some of these egregious

13

manifestations by way of VOID and VOID ab intion alleged "orders", and

placing Bahji Adams, under duress, by way of illegal coercion, illegal threats,

but not limited too, etc.

10) This petition for damages is strictly *NOT* about a typical domestic relations action

versus what would be the excepted reluctance of a federal court to execs rise jurisdiction

over the same; this cause insures to the very essence of the enactment and purpose of 28

USC 1441 and 1443; to provide for a federal remedy when a person "is denied or cannot

enforce in the courts of such State a right under any law providing for the equal rights of

citizens of the United States, or of all persons within the jurisdiction thereof."


Federal Questions in Regards to the American With Disability Act of Congress


Is the State responsible for the Subsidiaries of the State to include the counties

under the American with Disability Act of 1990, in which the 11th Amendment is violated

under the American With Disability Act of 1990, under the 14th Amendment, for under

42 U.S.C. 12111-12117, addresses discrimination by employers; title II, 42 U.S.C.

12131-1265, addresses discrimination by governmental entities; and Title III, 42 U.S.C.

12181-12189, addresses discrimination in public accommodations operated by private

entities. This case arises under title II, which provides that "no qualified individual with

a disability shall, by reason of such disability, be excludes from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. 12132. In Martin, this court

relied on the fact that "Congress when it enacted the ADA, made numerous findings of

fact regarding the pervasiveness of discrimaitnion against disabled persons" and properly

determined that the findings "establishing the existence of widespread discrimation

against the disabled are entitled to deference." 190 F.3d at 1127, 1128.

a)  "...the remedial purposes of the ADA are tailored to remedying and

preventing the discrimatory conduct, and are thus congruent and proportional

to the injury to be prevented or remedied.  The Act only prohibits

discrimination against "qualified individuals," and it requires only "reasonable

accomations" that do not impose an "undue burden" on the employer (or the

states).  The Plaitniff in all her cases has complied with the requirments of the

ADA. She is a "qualified individual" under the ADA by the definition of a

person which is limited in one or more of her dialy life activites in comparison

to others. She is not "incurabliy mentally ill", yet has repeatedly had

discrmiatory comments in regards to her "fitness" whichout any expert

opinions to claim such. She has been documented to have regressed to a 6th

and 8th grade reading and artimeitices at the beginning of said liagation. She

has been documented with problems in memory and excuetive functioning in

addition to other limiting impairments. An evaltuion was given to Judge

Kreeger, by and through his staff in chambers in regards to the report which

details this information. The judge was made appraised of this information

and choose to act in furtherance of a "reasonable accomdaiton" which in NO

way atlered the courts function, or would place an undue burden on the court.

In fact even on a STATE level, per the plaitniff's impairements she would be

allowed a "continuance" until the next term, yet the Judge saw no need based

15

on a "disability". This request is not in anyway an "unduly burdensome"

upon the court of the opposing party, it offers not advantage to the Plaintiff

above the opposing party, if anything, it would offer an advantage to opposing

counsel in the time to prepare, which the Plaitniff requires inorder to operate

on a "superior" level, without time restrications, as a document by medically

trained experts.

b)  " States no longer need to comply with the ADA or that private parties cannot

seek relief in federal court. The Supreme Court reaffirmed in Alden v. Maine,

527 U.S. 706 (1999), that Eleventh Amendment immunity does not **authorize**

**States to violate Federal law."**

NOTICE OF RELATED CASES

11) Petitioner also wishes respectfully to demand mandatory judicial notice, pursuant to

Rule 201(d) of the Federal Rules of Evidence, and present to the Full Faith and Credit

Clause, of the following related cases supporting and documenting some of the above

allegations, to wit:

a)Kartine Rice and Andy Rice v. Cannon et. Al, Rice v. Grubbs, which involves a

Judge of COBB COUNTY COURTS, and specifically Judge Kreeger.  Wendy Titileman,

Marla Right

12) There is a sufficient pattern of judicial abuse to substantiate that Judge Kreeger,

Judge Karen Woodson, Judge Kenneth NIX,Scott Kaye, willingly and repeatedly done to

cause mental anguish and emotional distriss and others jurisdiction over the instant state

action was most likely *void ab initio,* and even if not, that any attempt at continuing

exercising over the state proceeding *is* VOID. Just in the instant account that that the

16

Plaintiff's rights on an ongoing pattern in the State Courts has continually been deprived

of her most basic Fundamental, Substantive, Statuary, etc. Rights in state and Federal

LAWS.

13) Petitioner has a federal question right, under the guarantees' of 42 USC 2000a, to full

and equal lawful treatment in a state court of law, and according to the various

protections under not only the Georgia Constitution, but more importunately under those

of the U.S. Constitution.

14) Petitioner has a federal question right, under the protections of the Civil Rights Act of

1964, 42 USC 2000d et seq, and interpreted by the U.S. Supreme Court to *include*

prohibitions against discrimination based on sex or gender, to now remove the instant

state proceedings, under 28 USC 1441 and 1443, in order to be free from the denial of

such equal civil rights and treatment established by the above allegations. *See also* 42

USC 2000d-7.

15) Petitioner has a federal question right, under the protections of 42 USC 3617 and

3631, which include prohibitions against discrimination based on sex or gender, to

remove the instant state proceedings, under 28 USC 1441 and 1443, in order to be free

format he denial of such equal civil rights and treatment established by the above

allegations. *See also* 42 USC 2000d-7.

16) Petitioner has a further federal question right, under the protections of 42 USC 5891,

which include prohibitions against discrimination based on sex or gender regarding other

matters and allegations expressed *surpa*, to remove the instant state proceedings, under

28 USC 1441 and 1443, in order to be free from the denial or such equal civil rights and

treatment established by the above allegations. *See also* 42 USC 5106a, 5106c, 10406, 10420, 10701, and etc.

17) Petitioner has a further federal question right not to be discriminated as articulated according to the above allegations, under the expressed public policy of the Unites States of America, by and through ACTS of Congress strictly specifying the critical value of protecting children, youth, and family bonds, and the joint responsibilities of federal courts therein.. *See* 42 USC 12301, 12351, 12352, 12371, 12635, and etc.

18) Petitioner has a further federal questions right to ensure that his minor children are free from experiencing abuses/or neglect, due to unlawful sex or gender discrimination in awards of child custody, and to ensure that any involved state judicial systems meet or exceed their required corresponding duties under 42 USC 13001, 13003, 13201, 13031, and etc.

19) Petitioner has a further question right, under 42 USC 14141, to be free from unlawful violations of civil rights committed by the parties involved in the state proceedings.

20) Petition has further a question rights under 42 USC 14231, to be free from discrimination due to any disability, under this section and others applicable by law in that Congress has specifically in acted such mandates in regards to ADA of the Rehabilitation nAct of 1990 under 504 under the 14th Amendment.

The above numerous and various rights will, in fact, be consistently violated if these proceedings were ever to be remanded back to said state court, and manifest injury would accures upon not only this/these Petitioner(s), but also against the obvious best interest of her//his/their/ minor children, their liberty, property and life.

<u>NOTICE OF STANDING CASE LAW</u>

18

In U.S. v. Georgia, 2006 the United States Supreme Court held that:

In the case of Allen v. Allen 22 S.E. 2 d 136, the court holds the defining title of "Cruel

Treatment, stateing: " "This is true since one act of passion or ill conduct might not in

itself suffice to consitutute cruel treatment y "nagging" or other cosrse of conduct

injurisouly affecting or endangering nerves and health (Alford v. Alford, 189 Ga. 630 (2),

632, 7 S.E.2 d 278, 30 L.R.A, N.S. 73, 20 ann. Cas. 20, and Cit); and since, even if living

with the guilty party after one such act could under the particular circumstances amount

to a condonation, a repetition would revive pervious grounds." (Odom v.Odam, 36 Ga.

286 (5); Davis v. Davis, 134 Ga. 804 (1 a), 68 S.E. 594; Wood v. Wood, 179 Ga. 635 (2),

176 S.E. 483; and since it was further alleged that after previous acts of cruel treatment

the husdanc at the time he left the wife committed an act of "cruel treatment" "by

damning" and crusing her with like language, leaving her in an unfit place to live, 'in an

ill state of mind and body," and telling her that he "would live with her no longer, " was

"through with her forever," and "did not want to be anywhere around her." As in this case

the court should hold" "cruel treatment due to the account that Mr. George on several

occasions , has repeatedly placed Mrs. Adams in continued fear for her mental and

emotional health with repeat threats directly ammied at her liberty, being that of her

child. Mr. george, prior to the seprateion of the parties, stated to Mr. Adams when she

requested something be done about the abusive behavior that "where would you go you

have no money, you have no job, how would you support your self." Mr. Goerge

was/still is fully aware of the Plaitniff's TBI, Tramautic Brain Injury. This furthermore

was reinforced by Matt George, Mr. George's brother in that prior to the filing fo any

"speration agreement" or filing of divorce, Mr. Goerge's borther made comments to the

Plaitniff such as "got no money, got no job, sounds like a country song to me…" "these patterns lead to predictions if you know what I mean…" furthermore, continually calling late at night, when request to stop calling. Mr. George's father, both via physicall and emotional have immediatec Mrs. Adams, by size and refuseing to dissolve any disputes, but in stead verbally becomes loud and moves towards the Plaitniff, when he towers over her, being threatening. Mr. George, would throw phones, corner her in the kitchen, wake her up in the middle of the night, stand beside her bed, be gone for long hours of the night, be gone during the day and not tell the Plaitniff where he was. He would say he would only be gone for 45 minutes, but would be gone for 3 hours or more. He would not accompy her to doctor appointments. He did not accompy her or her mother to the ER, while Alexander was in the hipstial for 5 days, but would disappear, not answering his phone often for 12 hours or more. When Mrs. Admas would call the home, he would not pick up. He allowed the "annanbelle" the "pug dog" to bleed all over the furniture, yet would not clean it up, he would leave the "droppings" of the animal setting all day, or until Mr. Adams would clean it up. Even while at home, he would be gone for long walks. His family 3 weeks after Mrs. Adams gave birth to their grandson and his son, he would "nag" her continually to clean the table, but when she wanted to go take a bath and have some alone time for the first time in 3weeks, he nagged at her for not cleaing off the table, although she took the time to have a bath for the first time in 3 weeks to relax. Seeing how Mrs. Adams nursed the minor child for 13 months, Mr. George would refuse to get up and care for the minor child in the mornings to allow his "ill" wife the ability to sleep in in nearly 13 months. Mr. Goerge would pay cleaing men bonuses of "$50.00 each, but would complain about Mrs. Adams wanting to go out to get a nice dinner for

20

her and his son." Mr. George, will in the presence of the minor child uses "obfencive" words cursing at her telling her to quite being an ass..." while she tries to excersie her phone visiation with the minor child. Mr. George refsuees to allow the mother time with the child instead giving the minor child to third party care givers, with out offering her the right of first refusal.

Mr. Goerge has finically been supported in this behavior by Mr. James George. Mr. James George, has with intent tried to itimate Mrs. Adams ans on several times, refused to tell Mrs. Adams the location of her son, while out of the state. Mr. James has in violation of a VOID order taken only under illegal threats, placing her under duress, and distress, withheld the minor child from her. This family HAS maliciously and falsely represented themselves to the Plaitniff, in that it appears to be a continued pattern of gross verbal and physical abuse and intimatation in this family of which was NEVER fully disclosed to the Plaitniff prior to marriage. Furthermore, the plaintiff was promised that she and her husband would receive "$10,000.00" dollars a gift, yet to date, Mr. George's deceptive and fraudelt divorce is taking place. "the meaning of duress" was held by the court in the case of Bryant v. Bryant 13 S.E. 2d 725, which holds: "Duess" includes any concduct which overpowers the will and coserces or restrains the prefomance ofo an act which "otherwise" would not have been prefomed, "meance"means to show of an intention to inflict evil; threat; indication of problable evile or castorpthe to come; that which meances. An impending evil, and any overt act of a threatening character, short of assult, is a menace. This court further more held: " 1. One of the grounds of total divocre in this State is "Force, meances, duress,  or fraud in obtaining the marriage." Code 30-102 (4). "duress consisits of an illegal imprisonment,

or legal imprisionment used for an illegal puporse, or threats, of bodily harm, or other means amounting to coceion or tending to coceorce the will of another, and actually inducing him to act cotrarty to his free will." 96-209.  In Dorsey c. Bryans, 143 Ga. 186, 188, 84, S.E. 467, 468, Ann. Cas. 1917 A, 172 "This diefation is to include any conduct which over-pwers the will and coserces or restrains the performance of an act which otherwise would not have been preformed." In Wordley v. State, 136 Ga. 231, 235, 71 S.E. 153, 155, is quoted by Websters definition of the word "meance" to wit: " The show of an intention inflict evil, a threat; indication of problable evil or cstrophe to come, that which meances, an impending evil." In cummings v. State, 99 Ga. 662, 665, 27 S.E. 177, 178, webster's definition of the word was given, and in the opinion it was said that "any overt act of threatening character, short of actual assult, is a mence."  The court show the example of such to include one accusing the other of "their ruin.." has Mr. Adam George has specifically made this comment to thePlaitnff, that "she has runined him.."  Mrs. Adams is STILL IN FEAR FOR HER LIFE!.

## NOTICE TO PARTEIS

21) Petitieionr(s) now and hereby provide(s) his/her/their formal Notice of the above to all interested parties, of record or otherwise, within and surrounding the above-encaptioned state court proceedings. Plaitniff retains all rights to amend this complaint.

## SUMMARY AND PRAYER

22) Peteiitione(s) reiterate(s) that his/her/their request for removal to this Court is not just about a supported and reasonable *expectation* of future manifest deprivation of

22

his/her/their various civil rights within state court, but also that such a deliberately unlawful pattern of the same is well established.

23) Without the immediate intervention, and the exercise of full jurisdiction and without by this Honorable Court in removing said lower state proceedings, the Petitieiron(s) will be otherwise subjected to egregious denial and inability to enforce in said state court one or more rights under the laws providing for the equal rights of citizens of the United States, and will be likewise unlawfully forced to suffer manifest and irreparable injuries therein, without reasonable remedy.

23) The Plaintiff has standing to bring this complaint and petition, as said rights have already been violated with a repeat patter of the violations of several case records in the State of Georgia. As the acts have been unlawfully taken, and the Plaintiff, already damaged as a direct result of, this gives her standing for future relief.

Wherefore, the undersigned Petieitioner(s), Bahji Amelia Adams, now pray for the removal of the above-captioned state court proceedings into, and under, the justification of the United States District Court, will all speed, and for other relief deemed just and proper in the premises. The Plaintiff, further demands, compensatory damages in the amount of 15,000.00 dollars for 5 years for loss of a job. Acuuate damages in the amount of $950.00 a month for 1 year for loss of property, return of her property. A new car to amount in the total of not less than $10,000.00 dollars for actual damages, special damages, and punitive damages against all parties and the state. Punitive damages of $250,000.00 per person, and 2.5 Billion American Dollars against the State of Georgia, 1.5 Million silver liberty currency against the State of Georgia for punitive damages. Such other relief deemed necessity and approatie under the this action so as to deter the

any future actions of this type against the citizens protected under these rights. Primary Custody of the minor child, or sole, dependant on Mr. George's commentment to correct his unlawful conduct both to the child and the mother. Mr. George seek counseling to assist in his recovery. Plaitniff retains the right to amendment this complaint at anytime in the future, as a "reasonable accomadation" to ensure equal access to the court. In addition the Plaintiff will require an additional time frame in which to present discovery and the joint preliminary report as this is directly affected per her impairments. Respectfully submitted, in the interest of Justice, without want of delay and only in GOOD FAITH.

Bahji Amelia Adams

5086 Crowe Dr.

Smyrna, Ga 30082

Under duress, threats, and illegal coercion

All rights reserved without prejudice UCC 1-207/1-308

All constitutional rights in tact

### VERFITICATION

I hereby declare, verify, certify, and state, pursuant to penalties of perjury under the laws of the United States, without the United States, and by the provisions of 29 USC 1746, that all the above and forgoing representations art true and correct, to the best of my knowadglde, information, belief, ability to express, communicate, the same.

Executed at Smyrna, GA 30082, this day of October the 5th, 2007.

Bahji Amelia Adams    *11/11/07*

Under duress

*Marquatumuru Muy for*
*Bahji Amelia Adams*    CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of November, 2007, a true and complete copy

of the forgoing petition for complaint and declatory injunction relief, by depositing the

same in the United States mail, postage prepaid, by process serves, has been duly served

upon all parties of record in the lower court proceedings, to-wit:


Scott M. Kaye attorney for Scott m. Kaye, and Adam todd George

729 Pediment Ave

Atlanta, GA 300308


Julia b. Anderson counsel for Judge Kreeger

90 Capitol Square

Atlanta, Ga


Judge Kreeger

32 Waddell Street

Marietta, GA

STATE BAR OF GEORGIA,

COBB COUNTY CLERK'S OFFICE

COBB COUNTY COURTS, CHIEF JUDGE, SUPEROIR COURT OF COBB

COUNTY

And that the same is being filed this sesame date within the lower state trail court proceedings.

Bahji Adams

5086 Crowe Dr.

Smyrna, GA 30082

Under duress, threats, and illegal coercion

404-935-3141

All rights reserved without predjuce UCC 1-207/1-308

All constitutional rights IN TACT

## STATEMENTS OF FACTS AND UNDISPUTED FACTS OF THE RECORD
## JUDICAL NOTICE

1. Bahji Adams, being myself, has suffered mental and emotional in adition to physical loss by way of the following events and surrounding circumstances surrounding that events. As a direct result of NOT being allowed "leave it alone, let it stand" in regards to case precedent of the Georgia Surpeme Court and the United States Supreme Court.

2. Due to November the 13th, 2006, and the Judges's inability to allow for "reasonable accodmations", I have felt as less than a person. I have had feelings with emotions of anxiety, crying, depression, frustaration, and feeling as if I will never beable to have Justice in a court of law. I NO longer believe in "justice" or

the 'rule of law' as a direct result of the allowed intention of emotional deprivation of my fundmentally protected rights. I have felt as less than an individual and as if I was used as a "burd mare" which is no longer needed, therefore subject to being abused in any manner which the court thinks they are allowed to act, even knowing their actions are in opposition to the law.

3. I have had musclce spasm as a direct result of the anxiety and intentional undue burden which has been illegally and unlawfully placed on me.

4. I have felt rejected from society and I felt and still feel the sense of isolation from being singled out on the basis of my disability and standing on my rights to mandates and Cosititional law under the 504, ADA, and the 14th Amendment.

5. I have been humiliated by third parties and isolated by third parties due to the VOID order, which was only taken in violation of Due Process of both FEDERAL and STATE MANDATES.

6. When I hear a discoratory comment in regards to age, "unfit" and other discortoy comments, my mind just gets blown off track. I quickly want to just cry, however, have to compensate for the emotional reacitivy. The mere account that Scott Kaye and Adam George filed in the court record that I was "incurablity mentally ill", which claims an incomptenence is discoritotory due to the account that this court has allowed him to verball abuse me via comments of "usually screw" up, knowing that I had suffered a loss as a result of a TBI, tramatic Brain Injury.

7. I have felt singled out when I requested a continuance, yet Scott Kaye refused to allow for one, yet the Judge would allow "attorneys" continuance for not being "prepared".

8. I have suffered angry as a result of the refusal of Scott Kaye to act in a manner required within the law and this courts failure to act in regards to the ADA, 504, and the 14th Amendment. I have suffered being upset as a direct result of Scott Kaye making comments in regards to my age. I have suffered upset over the Judge allowing for "reasonable accomdations" and applying them to "normal" persons, and negating the need for myself to have "reasonable accomdations". I feel and have felt that I have been made to be "perfect" yet NO ONE ELSE is HELD TO THE SAME STANDARD!

9. I have dealt with complete surprise that a JUDGE WOULD ACT IN THE MANNER IN WHICH THEY HAVE! I HAVE BEEN disappointment and hurt as a result of the carelessness, thoughtlessness, and inaction for the court to provide "reasonable accomdations" to myself. I see and felt and still fell threatened with illegal charges and or false arrest for standing on my RIGHTS! I feel as thought I have been unlawfully singleout as a result of standing on my rights.

10. I was hurt, in disblief, anger, and became more volunabler when I went to several organizations, people, insitutions, and when I am told that "their political" wings are clipped, I can not believe that people operating government positions would act in such a manner. When I went to the ADA of Cobb County and he could not supply any information, I became more upset, in disbleif, that a county, which is

mandated to provide such, HAD NO KNOWLEDGE of any "programs".  When I

asked the balif in the court on July the 3rd, 2006 I was schocked that an employee

of the court could not direct me to a person to speak with in regards to my ADA

rights!  I was exstemely vulnerable and scared. I immediately felt threatened and

alone!

11. Even now, I am feeling sad emotions as I recall this experience that I have been

foced to endure for the past two years.

12. I am humiliated and embrassed that I have been treated in such a manner! I am

embrassed at the personal attacks which this court has done and has allowed to be

done.

13. I have been stripped without due process of law as a MOTHER.  I have been

made to feel as if I should have had an "aboration".  I have been made to feel as if

I DO NOT MATTER IN THIS SOCIETY and THAT I HAVE NO RIGHTS and

HAVE HAD NO RIGHTS! I HAVE BEEN MADE TO FEEL NO MORE THAN

AN SLAVE! I have been made to fell as though I may NEVER FIT IN IN

SOCIETY AS A DIRECT RESULT OF THE defamation of character attack on

my personality, the confusion and upset that I have endured and the I will

NEVER BEABLE TO TRUST ANYONE AGAIN!  I Fell as though I HAVE

BEEN EMOTIONALLY RAPED TIME AND TIME AGAIN!

14. I fell as though the court and ADAM GEORGE, SCOTT KAYE, a have stripped

me of my right to be a mother to my child, who is my greatest liberty!

15. I have been irrapable HARMED AND HAVE SUFFERED A LOSS of my own liberty, my liberty of my son, my property, mental anguish, emotional distress and I am still under DURESS!

16. I have been afraid of "police" officers, not for anything that I have done, but because theya re not trained to deal with people with mental impairments!

17. I have been singled out due to the account that I talk loud, not meaning to, but due to my impairments! Thus I am discrimated due to my emotional reacvtivity and I am EXCEPTED TO BE PREFECT, yet THE LAW HAS REQUIRED THAT NO ONCE ELSE BE OR FUNCTION IN A PREFECT MANNER!

18. As a diect result of the November 13th, 2006 unlawful threats, due to prioir threats, on Septemeber the 18th, or thereabout with a "holding cell" for excerisign my ADA rights on my behalf and the minor child, I HAVE FELT THAT THERE IS NO RULE OF LAW!

19. For weeks I have been that the court was telling me that I am "crazy" that I am "unfit" and not worthy of participating as a citizen to fundmental rights extened to every person. That I am incapable or incompetent to make judgements, or under stand the LAW! I felt the same feelings of self worth and a sense of alienation that I have experieved for being an actirive lady!  As if I am "PREFECT" and fordced into being "perfect" of which NO ONE IS! I would imagine my feels to be "equivlant" to a person who is blind who is "forced" to write and read what they have written. AS if the court would tell that person, no you will just have to "read" KNOWING THAT THEY ARE BLIND AND REQUIRE "reasonable accomations". I feel no different than if a person who is deaf, WHO CAN NOT

HEAR is TOLD to ANSWER SOMETHING, but DOES NOT BECAUSE THEY DID NOT HEAR, therefore, the court knowing they can not hear, they put them in a holding cell for no answering! IT IS THE THOUGHTLESSNESS, that I have endured due to "looking" normal, when there are clear documented impairments, which causes me great frustaration, hurt, and anxiety! My sole topic of coeverstion, is NO A RESULT OF THE VIOALTIONS AND INHUMAN TREATMENT WHICH I HAVE SUFFERED!

20. MY PERSONAL AND FAMILY RELATIONSHIPS HAVE SUFFERED AS A DIRECT RESULT OF SUCH CONDUCT by the courts and Scott Kaye.

21. My employement has suffered as a direct result of such unlawful conduct by the court and Scott Kaye! I may NEVER HAVE ANYTHIONG IN COMMAN WITH ANOTHER PERESON AND AS THE RESULT OF MY LOSS!

22. On July the 3rd, 2006 Scott Kaye, with knowing and knowing that he had the information in which he was seeking, still choice to go into the court and subject myself to ridicule of the court by way of FAMOUS LIBELLUS, *meaning literally, a slander or libelous...petition, written acusacation or indictment.* In such this conduct should be false swearing of comman law which is a misdeamor, yet the court, still would allow Scott Kaye to subject the myself to riducle by way of slander, instead of "protecting" the 'rule of law'

23. I am still extremely upset of the "false pretense" of Scott Kaye and Adam George obtaining illegally property by false pretense. I have been deprived of all Droit, *a right; lawthe whole body of law.* Therefore, I am unable to enforce any of my rights in the courts of Georgia, thus giving this court jurisdication.

24. I feel as thou there is no protection from people who would want to leave an abuser and an abusive enivorment as I have had phones through at me, been cornere in the kitchen, had mental abuse on top of the aggressive abuse, and this court has condone this abusers actions. From this I have feels of complete helplessness and a loss of hope, in that there can ever be an "appearance" of justice for all equally.

25. The defendant has falsely and malicoulsy represented false statements of matierla fact not once byt with an ongoing pattern on July the 3rd, 2006, by letter prior to this date, by motion prior to this date, Septemeber the 18th, 2006, and by motion and letter prior to this date, November the 13th, 2006, and continuing thereafter. The false statements and actions taken in direct opposition to the law was made in order to, and will knowing that it would, inflame the feelings of, and made the prupose of causing the Plaitniff emotional distress and to place her under duress.

26. Petetioner is informed and upon such information and belief of the circumstances surrounded such discrotory comments, lack of "Due Process" as defeindd as in Georgia Courts Holding.

27. Plaitniff has repeatly denied access to the courts of this state, when she mandates her rights under 504 of the rehabiltion act under title II of the American with Disability act. She has been subjected to direct threats when she mandates same mentioned herein.

28. She is unable to enforce her rights as a white woman, with religious beliefs and has been the subject of direct threats due to her gender, race, religious belief, and her ADA standing.

32

## VERFITICATION

I hereby declare, verify, certify, and state, pursuant to penalties of perjury under the laws

of the United States, without the United States, and by the provisions of 29 USC 1746,

that all the above and forgoing representations art true and correct, to the best of my

knowadglde, information, belief, ability to express, communicate, the same.

Executed at Smyrna, GA 30082, this day of

11/11/07